IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

**UNITED STATES OF AMERICA,**

        **Plaintiff,**

vs.                                        No. 21-CR-00720 KG

**RYAN TYREL COBBS,**

        **Defendant.**

## OBJECTIONS TO PRESENTENCE INVESTIGATION REPORT, MOTION FOR DOWNWARD DEPARTURE OR VARIANCE, AND SENTENCING MEMORANDUM

Defendant Ryan Tyrel Cobbs, by and through his attorney, Assistant Federal Public Defender Imtiaz Hossain, hereby objects to the Presentence Investigation Report ("PSR") Additionally, Mr. Cobbs moves for a downward departure and/or variance based on the severity of the felon in possession guideline in relation to the nature of this offense, as well as Mr. Cobb's history and characteristics Mr. Cobbs hereby requests that this Court impose a sentence of 36 months followed by a period of supervised release. Such a sentence would be sufficient, but not greater than necessary, to satisfy the statutory purposes of sentencing provided in 18 U.S.C. § 3553(a).

## I. Introduction

On May 20, 2021, an indictment was filed with this Court charging Mr. Cobbs with felon in possession of a fireman and a related offense. Mr. Cobbs pleaded guilty to the indictment on October 18, 2021. The Presentence Investigation Report ("PSR") was filed January 11, 2022. The Presentence Investigation Report ("PSR") assigned a base offense level of 22 under U.S.S.G. § 2K2.1(a)(3), added an enhancement of 2 levels for the number of firearms under U.S.S.G. § 2K2.1(b) (1) (A), a 2 level enhancement for a firearm reported stolen under U.S.S.G. § 2K2.1(b)(4)(a), and a 4 level enhancement for possession of a firearm in connection with another felony offense under U.S.S.G. § 2K2.1(b)(6)(B). The PSR deducted 3 levels for acceptance of responsibility pursuant to U.S.S.G.§ 3E1.1(b), for a total offense level of 27. (See PSR ¶¶ 25–36.) The PSR found a total criminal history score of 6 and assigned a criminal history category of III. (See PSR ¶¶ 39-47). With a total offense level of 27 and a criminal history category of III, the resulting advisory guideline range is 87-108 months. (See PSR ¶ 76.) Mr. Cobbs has been in custody since his arrest on August 10, 2021, however he has only been in federal custody since May 27, 2021. (See PSR ¶ 18.)

Mr. Cobbs respectfully objects to the enhancement of 4 levels for possession of a firearm in connection with another felony offense and requests a downward departure or variance to a sentence of 36 months followed by a period of supervised release based on his relative success and rehabilitation, his resolve to overcome his addiction, and the nature and circumstances of the offense.

## II. Background

Mr. Cobbs is 39 years old. He was born in Hobbs, New Mexico and raised primarily by his mother Lisa Rodgers. His father was not actively involved in his life, however his stepfather, Hershel Rodgers, filled in that role of father to the best of his ability.

Mr. Cobbs recalls he had a decent childhood despite the absence of his father. He did not suffer any type of abuse. He does recall that his upbringing consisted of family vacations and remaining a united family. Mr. Cobbs' childhood and young adult life can best be described as uneventful. After a rather normal upbringing, Mr. Cobbs had his first contacts with the criminal justice system in his early 20's. This was around the time Mr. Cobbs began using substances. Although Mr. Cobbs dropped out of high school to work, he did successfully complete his GED.

Mr. Cobbs is currently married to Breanna Cobbs. They have been together for over one year, and married in December of 2020. The couple do not have children together. Mrs. Cobbs does have four children who reside with their father. Mr. Cobbs has one child, Diamond Marie Heath Cobbs, who is 6 years old and is currently residing with Mr. Cobbs' mother Lisa. Diamond's mother has been dealing with her own substance abuse issues which lead to Diamond temporarily being entrusted to her grandmother's custody.

Mr. Cobbs did not complete high school but did get his GED. He has been working with a party services company and hopes to open his own company when he is eventually released from prison. Mr. Cobbs wants the Court to know that he has made poor decisions in his life but has remained gainfully employed and out of trouble since his last criminal conviction in 2016. He has also remained sober from his methamphetamine addiction for over 3 years now. He recognizes that

while his addiction has been controlled to the extent that it is, his wife's has not. He remains supportive of her and hopes that she will be able to fight he addiction and he intends to help in any way possible.

Mr. Cobbs takes full responsibility.

**III.     Argument**

"Since the Supreme Court's decision in *Booker,* which relegated the Sentencing Guidelines to an advisory status, district courts have been free to apply any sentence that is 'reasonable' under the sentencing factors listed at 18 U.S.C. § 3553(a)." *United States v. Smart*, 518 F.3d 800, 803 (10th Cir. 2008) (*citing United States v. Booker*, 543 U.S. 220, 261 (2005)). While the guidelines must serve as the "starting point and the initial benchmark" of this inquiry, the sentencing court "may not presume that the Guidelines range is reasonable." *Gall v. United States*, 552 U.S. 38, 49–50 (2007).

Sentencing courts are guided by the "parsimony principle" of 18 U.S.C. § 3553(a), which states that a court "shall impose a sentence sufficient, but not greater than necessary" to achieve the purposes of sentencing expressed in § 3553(a)(2). *See Dean v. United States,* 137 S.Ct. 1170, 1175 (2017). When determining a sentence, a court must consider the seven statutory factors set forth in § 3553(a). The factors include: (1) The nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for a sentence to reflect the seriousness of the crime, deter future criminal conduct, to prevent Mr. Cobbs from committing more crimes, and provide rehabilitation; (3) the sentences that are legally available; (4) the Sentencing Guidelines; (5) the

Sentencing Commission's policy statements; (6) the need to avoid unwarranted sentence disparities; and (7) the need for restitution. See 18 U.S.C. § 3553(a) (1–7).

A sentencing court should "engage in a holistic inquiry of the § 3553(a) factors." *United States v. Barnes*, 890 F.3d 910, 916 (10th Cir. 2018) (citations omitted). "A district court properly engages in this inquiry when it bases its decision on specific, articulable facts supporting the variance and does not employ an impermissible methodology or rely on facts that would make the decision out of bounds." *United States v. DeRusse*, 859 F.3d 1232, 1236 (10th Cir. 2017). Mr. Cobbs respectfully requests a sentence of 36 months followed by a period of supervised release, a sentence sufficient, but not greater than necessary, to satisfy the statutory purposes of sentencing.

**IV. DISCUSSION**

    A. **Objection to Paragraph 28 of the PSR: U.S.S.G. § 2K2.1(b)(6)(B)**
        1. Standard

The government must prove the facts supporting a sentencing enhancement by a preponderance of the evidence. *See United States v. Gonzales*, 931 F.3d 1219, 1224 (10th Cir. 2019); *United States v. Garcia*, 635 F.3d 472, 478 (10th Cir. 2011). To carry this burden, the government must show that "the existence of a fact is more probable than its nonexistence." *Concrete Pipe & Prods. of Cal., Inc. v. Constr. Laborers Pension Tr. for S. Cal.*, 508 U.S. 602, 622 (1993); *see also United States v. Matthews*, 942 F.2d 779, 784 (10th Cir. 1991) ("The government bears the burden of proving uncharged conduct by a preponderance of the evidence.").

2. Objection

Mr. Cobbs objects to the four-level enhancement in Paragraph 28 of the PSR because the government cannot meet its burden to prove possession of the firearms was in connection with another felony offense. U.S.S.G. § 2K2.1(b)(6)(B) provides for a four-level enhancement to a defendant's base offense level, "If the defendant used or possessed any firearm or ammunition in connection with another felony offense; . . . ." U.S.S.G. §2K2.1(b)(6)(B). Application Note 14 to U.S.S.G. § 2K2.1 specifies that the use or possession is "in connection with" a different felony "if the firearm or ammunition facilitated, or had the potential of facilitating, another felony offense." U.S.S.G. § 2K2.1, Application Note 14(A). "The plain and commonly understood meaning of 'facilitate' is to make easier." *United States v. Marrufo*, 661 F.3d 1204, 1207 (10th Cir. 2011) (citing *United States v. Gandy*, 36 F.3d 912, 914 (10th Cir. 1994) (recognizing that "facilitate" means "to make easier"); Black's Law Dictionary 668 (9th ed. 2009)(defining "facilitate" as "[t]o make the commission of a crime easier")). But see U.S.S.G. § 2K2.1(b)(6)(B) cmt. 14(B)(ii) (increase applies "in the case of a drug trafficking offense in which a firearm is found in close proximity to drugs, drug-manufacturing materials, or drug paraphernalia"); *United States v. Bunner*, 134 F.3d 1000, 1006 (10th Cir. 1998) (holding that physical proximity between a weapon and narcotics can be sufficient to satisfy § 2K2.1(b)(6)).

In *United States v. Justice*, 679 F.3d 1251 (10th Cir. 2012), the Tenth Circuit stated that it agrees "with several other circuits that have held that possession of a firearm may facilitate an offense by emboldening the possessor to commit the offense." Justice, 679 F.3d at 1255. In that case, the defendant "was carrying methamphetamine on his person," the "firearms were within easy reach, and they were loaded"; thus, the Tenth Circuit concluded that "[a] reasonable person could

find that the firearms gave him a sense of security emboldening him to venture from his home with drugs that someone might wish to take from him by force." Id.

In this case, the evidence is insufficient to support the enhancement for possession of the firearms "in connection" with another felony offense. A similar scenario was presented in *United States v. Ortiz*, 457 F. Supp. 3d 1129 (D.N.M. 2020). In *Ortiz*, the defendant phoned the local police and threatened to start shooting people in retaliation for the murder of his sister. *Ortiz*, 457 F. Supp. 3d at 1131. Federal agents secured a search warrant, searched the defendant's house, and found firearms and ammunition. Id. The government charged the defendant with being a felon in possession of firearms, and the defendant pleaded guilty. Id. The PSR imposed the four-level enhancement under U.S.S.G. § 2K2.1(b)(6)(B) for possessing firearms or ammunition "in connection with" another felony offense. *Ortiz*, 457 F. Supp. 3d at 1132. Mr. Ortiz objected to the four-level enhancement on the ground that the government could not show that the possession of the firearm emboldened him to commit the crime of assault. Id. The district court sustained the objection. *Ortiz*, 457 F. Supp. 3d at 1141. The district court determined that the government had not demonstrated by a preponderance of the evidence that Mr. Ortiz possessed a firearm in connection with another felony offense. Id. To prove that the defendant's possession of the firearms was "in connection with" threatening phone call offense, the government had to prove that the firearms "facilitated" the phone call offense – in other words, that possession of the firearms made it easier to commit the phone call offense, or emboldened the defendant to commit the phone call offense. "The relevant inquiry is not whether Ortiz' handgun possession caused the felony offense, but whether it "ma[d]e easier," *Marrufo,* 661 F.3d at 1207, or "embolden[ed]," *Justice*, 679 F.3d at 1255, the offense.

> It is possible that Ortiz' firearm possession made easier or emboldened his telephone call; the preponderance of the evidence does not, however, support such an inference. *See United States v. Magallanez*, 408 F.3d at 684–85. Accordingly, the Court concludes that Ortiz' firearm possession was not connected with his threatening telephone calls and does not justify an enhancement under § 2K2.1(6)(B).

*Ortiz*, 457 F. Supp. 3d at 1142.

Here, Paragraph 19 of the PSR claims that "Cobbs illegally possessed seven firearms, two of which were reported stolen and one of which was a sawed-off shotgun and unregistered, while being a prohibited convicted felon. Additionally, Cobbs possessed approximately 10 grams of methamphetamine, drug paraphernalia, and counterfeit money from his residence, which were found in close proximity to the firearms." (PSR ¶ 19.) The PSR does not supply an adequate factual basis for the four-level increase. See *Ortiz*, 457 F. Supp. 3d at 1142.

The government must prove the facts supporting a sentencing enhancement by a preponderance of the evidence. See *Gonzales*, 931 F.3d at 1224; *Garcia*, 635 F.3d 478. To carry this burden, the government must show that "the existence of a fact is more probable than its nonexistence." *Concrete Pipe*, 508 U.S. at 622); see also *Matthews,* 942 F.2d at 784 ("The government bears the burden of proving uncharged conduct by a preponderance of the evidence.").

In the present matter, the four-level sentencing enhancement does not apply because there is no evidence that possession of the firearms facilitated or emboldened possession of the alleged methamphetamine, drug paraphernalia, or counterfeit money. See U.S.S.G. § 2K2.1(b)(6)(B). Under these circumstances, application of the four-level enhancement in connection with another felony offense would be inappropriate.

B. **Request for downward reduction in offense level or variance based on the severity of the offense relative to the nature and circumstances of the offense**

District courts must consider the 18 U.S.C. § 3553 factors in applying a sentence that is "sufficient, but not greater than necessary" to fulfill the aims of those factors. Among other factors, § 3553(a)(1) requires the court to consider "the nature and circumstances of the offense" when developing an appropriate sentence.

Mr. Cobbs is a convicted felon, there is no doubt about that. Mr. Cobbs took responsibility for the offense conduct as well. What must be considered is the particular nature and circumstances of this offense, and that must be looked at in context.

On August 2, 2020, the Hobbs Police Department received a phone call related to a case of fraud involving counterfeit bills and an iPhone. Officers responded and ended up looking from Breanna Cobbs, Mr. Cobbs' girlfriend at the time. Upon arriving at the location where the officers were led to, the officers sought to question Mrs. Cobbs in relation to the offense, however, they received no response when they attempted to make contact at the residence. Mr. Cobbs subsequently arrived at the home from work and was fully compliant with the officers. He was not a subject or target of questioning or any offense.

The officers relayed their attempts at making contact with Mrs. Cobbs to Mr. Cobbs. Mr. Cobbs then voluntarily entered into the residence in an attempt to assist the officers in retrieving the iPhone. He could not locate it as he had nothing to do with the offense and was only then returning home from work. The officers, notably, indicated to Mr. Cobbs that they were only

9

looking for Mrs. Cobbs and they only wanted the iPhone back. Mrs. Cobbs was arrested soon after she exited the residence and was given the opportunity to assist the officers in retrieving the iPhone. Mrs. Cobbs, along with an officer, entered the residence in search of the iPhone but could not locate the iPhone and it was subsequently learned by defense that a roommate at the time may have taken the iPhone.

At this point, the officers requested they be allowed to search the entire house. Mr. Cobbs, after assisting the officers in searching for the iPhone, assisting with making Mrs. Cobbs available with no incident, and personally searching for the iPhone based on the information provided to him in the presence of the officers was unable to locate the iPhone. Mr. Cobbs was considering whether he should consult a lawyer. Again, Mr. Cobbs just returned home from work to find police at his residence searching for his girlfriend. After making multiple attempts to assist the officers, the mere inquiry about whether he should consult a lawyer with regards to allowing the police to search the entire home led the police to declare that they will apply for a search warrant. At this time, the residence was secured and no one was allowed to enter. Mr. Cobbs did attempt to consent to the search of the premises while he was waiting at the residence but the officers decided to return with a search warrant which they subsequently did. The original search warrant was only for the iPhone and the instrumentalities of the offense committed by Mrs. Cobbs. Again, the original search warrant had nothing to do with Ryan Cobbs. While executing the original search warrant, firearms were located and a subsequent search warrant was issued.

Mr. Cobbs assisted the police in every way imaginable. Even after his arrest one week later, he cooperated and truthfully provided a statement with regards to the firearms that were retrieved in the home. He indicated that because the house did not belong to him he did not know

10

about all of the firearms. And he also indicated he did not have knowledge of stolen firearms. Also, because his cousin Kevin was also staying at the home, he could not tell with certainty anything that Kevin may have possessed in his room.

Mr. Cobbs understands the serious nature of the offence for which he is charged. He also accepts responsibility for the offense. Although the house does not belong to him and he did not have total control over every room, he is cognizant of his responsibility over the home that belonged to his father. It should be noted that his father sold the house after Ryan's arrest.

The sentencing guideline allow the Court to consider the "nature and circumstances of the offense." The nature and circumstances of this particular offense warrants a departure of variance. Mr. Cobbs did not hinder or obstruct the investigation in any manner, but rather helped the officers. He begs the Court to consider that when determining his final sentence.

C. **Request for downward reduction in offense level or variance based on the history and characteristics of the defendant.**

Along with the nature and circumstances of the offense, District courts must also consider "the history and characteristics of the defendant" when developing an appropriate sentence. Such that the Court intends on promoting unwarranted disparities in sentencing, the history and characteristics of the defendant is vital to the formula in determining a sentence that is sufficient but not greater than necessary.

Mr. Cobb's felony convictions date back over 15 years. But again, context is important to understand what leads a young man from Hobbs, New Mexico with a rather vanilla childhood to begin committing crimes in his mid-twenties. Simply put, substance abuse has turned many people to commit acts that do not seem to fall in line with their upbringing. As noted in the

PSR, Mr. Cobbs did not have a terrible childhood. Although his father was absent from his most formative years, he retained some semblance of a normal upbringing.

Mr. Cobbs began using substances in his mid-twenties. He began drinking alcohol, to smoking marijuana, then moving onto smoking methamphetamine and ingesting prescription pills. This terrible and all-to familiar spiral has ruined many lives. Mr. Cobbs' story is somewhat different.

Mr. Cobbs has multiple convictions over the past 15 years yet he has never spent an extended time incarcerated. His longest jail sentence was due to a probation violation for which he spent 94 days. His lengthiest conviction saw him exposed to 9 years in prison which was imposed in 2016. That sentence was completely suspended and during that time Ryan completed his residential re-entry, residing in a halfway house for nearly two years. It was here that he learned the skills required to lead a life of sobriety. Every day at the halfway house, Ryan participated in group counseling and 10-step meetings to address his addiction. He was also able to secure employment. The successful completion of the program was a part of his sentence. What that meant for Ryan was 9 years in prison for failure. He pushed himself and with the support of this family he was able to successfully complete his program. He moved in with his mother and after a short time of parental supervision, he was able to move into his father's home. He's had no convictions and no relapses since 2016. He was able to prove to himself and his family that he can move on after a tumultuous couple of years.

## V. Conclusion

For the foregoing reasons, Mr. Cobbs respectfully requests a sentence of 36 months followed by a period of supervised release. Such a sentence would be sufficient, but not greater than necessary, to satisfy the statutory purposes of sentencing set out in 18 U.S.C. § 3553(a).

Respectfully submitted,

**FEDERAL PUBLIC DEFENDER**
506 S. Main, Ste. 400
Las Cruces, NM 88001
(575) 527-6930

By */s/ Imtiaz Hossain*
   **Electronically filed 4/18/2022**
   Imtiaz Hossain
   Assistant Federal Public Defender